Case number 23-5732, Munson Hardisty LLC versus Legacy Pointe Apartments LLC. Argument is not to exceed 15 minutes per side. Mr. Scalabrine for the appellant. Good morning. New Police Court. My name is Gary Scalabrine. I represent the defendant and the appellant, Munson Hardisty, in this matter. I'm reserving four minutes for rebuttal. I think the issue I'd like to primarily focus on is what I consider the primary issue in this case, and that is whether or not Munson Hardisty could maintain an unfair quantum merit claim in this case. Under Tennessee law, as a matter of Tennessee law, a quantum merit claim, an unfair claim, there must establish two things. One, that there's no existing contract. And two, that covers the same subject matter that the plaintiff is asserting its claim. And in this case, it makes sense because the court essentially will impose a contractual matter implied on the parties if there's no contract or if that contract becomes somehow invalid or enforceable. In this case, there is no dispute that there is an existing contract. That's a construction contract. And what the parties, certainly the plaintiff has alleged in its complaint, was that there was a construction contract and sued for breach of contract. It also, the jury explicitly found that there was a contract in this case. The contract provides that all changes, including changes in scope, which is what the appellee focuses on, must receive written approval by the owner's lender and HUD. And that's important. What HUD didn't want to happen in this case or in any of its contracts is that there would be work outside the scope which it did not approve. I should note here that Munson Hardesty did not contend anywhere in its brief or down below that it received approval from HUD. It essentially concedes that point, and that is key, I think, in this matter because unless it got approval by HUD, the change words were not valid. Counsel, it seems your argument hinges upon whether Tennessee law allows for this quantum merit or unjust enrichment theory to proceed when you have a construction contract that has a procedure for work change orders. And the best case, it seems like the other side has, may be this Tennessee case from 1980 called V. L. Nicholson Company v. Transcon Investment and Financial Limited. And they represent in their brief that that is a case where the Tennessee Supreme Court allowed the contract to recover under an implied contract theory even though there was a construction contract in place. How do you address that case? The problem is, and it's addressed in the brief, but I think in our rebuttal. I'm wondering how you would address it here to me. I understand that. The first and foremost is it's distinguishable because the case did not consider whether or not if there is a construction contract that covers the same claims asserted by the defendant, whether or not it could pursue those two theories of cause of action. Rather, what the court determined was there was an express contract between the contractor and the owner, and the developer was not a part of the agreement. The contractor further found that the architect had apparent authority to bind both the developer and the owner. So the case turned more on whether or not the architect had authority to approve the change orders on behalf of the developer and the owner and not whether or not if there was no approval of the change orders at all. Within this case, and I think what's unique to this case and important in this case, is that with respect to HUD, HUD wanted that ultimate control. They wanted to be able to say, yes, you can approve something that is within the contract or not. In fact, in the record you'll find that Munson Hardesty had asserted change orders that were approved and were a part of the contract and a number that were not approved. The problem is that they don't address it. They weren't approved by HUD because HUD did not believe they should be a part of the contract. The contract was given the contractor, and again, it's important that the contractor gets prior approval to doing these change orders. So in this case, what Munson Hardesty failed to do, and Munson Hardesty claims that it was because of Mr. Moore that he wanted to do these all at the end, but at the end of the day, there's a procedure within the contract that they needed to follow. They apparently did not follow that project, or certainly they did not follow the project to where HUD believed it could approve those change orders. I think this is distinct from Nicholson as well as the other case that they referred to, Realty, in that this contract has a procedure by which change orders have to be approved. It's not simply, and I think, again, Nicholson, the architect, had that. Wasn't there at least allegations that your client told the contractor not to submit the change orders, to go ahead and just do the work, and that that would be done later? Isn't that part of the facts here that you have to take into account? No, I don't think so, because ultimately anyone could say anything, anyone could testify to anything, but what's more important is that the procedure is wrapped up into the contract. Yeah, but if both parties agree they're not going to follow the procedure, then what happens? The contractor is proceeding at his pearl. I think at the end of the day, the contract states exactly what should be done, and I think one of the things that— I think there are some in Tennessee that say that, because there are a whole host of them. Judge Bush gave you a case, but there are also a whole host of Tennessee appellate court decisions that use the same AIA terms, the same change order things, that seem to say the other thing, that if you have, as Judge Batchelder asked, both parties kind of agreeing to go forward without actually doing the change order and things like that, then sure, maybe it's not in the contract anymore and maybe you can get HUD approval, but this is what we call an implied contract. Well, I think the distinction I think there is, again, you're looking only at the AIA portion. I think if you look at the HUD portion of the contract, which is proceeding, it specifically requires to HUD to approve, and I think HUD does not want these contracts out there, which goes beyond the amount that are agreed by both parties. One of the things I think is important to remember in this case is months in hardesty, if it does recover on its claim, it is a windfall. It is not money that months in hardesty actually spent. They never paid the subcontractors that work, and I think if you look at the Southern District Court of Hardesty, which is cited in our reply brief, it is made clear that the amount was paid by Mr. Moore and that ultimately months in hardesty, although they say there's all these claims of damages, months in hardesty has not been damaged in this case. Well, they were damaged by the markup, weren't they? Doesn't a contractor normally markup what the subcontractors are having to pay? In this case, they took the BISPRA. They took the 10%, and they decided, months in hardesty did, that they transferred that BISPRA, or 9.9% of that BISPRA, because the contract was going so poorly. This is a contract that required a huge influence of cash by Mr. Moore. It was not a contract that was going well. So again, I think that Tennessee law is clear in that if you do have an existing contract that has the same subject matter that the claims are, that you cannot pursue these implied contract claims, either in quantum merit or unjust infringement. Aren't you complaining here that the district court didn't instruct the jury that way? Well, that's one of the arguments, sure. Did you ask for that instruction? We asked for a special jury, a special verdict, which the court denied to give. Didn't the jury specifically find that it wasn't the same subject matter? The judge instructed them that to succeed on a claim of quantum merit, I can read it for you here, plaintiffs must show a no existing enforceable contract covering the same subject matter. Isn't that a jury finding? Well, there wasn't a jury finding. Well, but the jury was instructed in order to find, to succeed on a claim of quantum merit, they had to find that. They were instructed to that along with instructions which they did not have in front of them. All I can say is they did find that there was an existing contract. Right, but you told me that the second thing is the same subject matter. And the judge did instruct them that it couldn't be covering the same subject matter. Right, and I believe that as a matter of law, this court can now look at that and determine that under the facts of this case that the same subject matter was in my time's up. I can address that in rebuttal. Thank you, counsel. Sure, thank you. Good morning, and may it please the court. My name is Ali Majdahi for the Appali Munson Hardesty. Your Honors, the central question that you're being asked is whether a property owner, the legacy point, can ask a contractor, Munson Hardesty, number one, to do work outside of the contract, number two, to benefit from that work, number three, to carry the value of that work on its books as a payable owed to Munson Hardesty, to number four, leverage the contractor by withholding payment from the contractor and forcing the surrender of the 10% equity that the contractor was due for fear of a bond claim and then turn around and say that the contractor is not entitled to equitable remedies because the owner itself did not process change orders. So is the damage that your client is alleging here just the surrender of the 10% equity, is that the only damage? No, Your Honor. What other damage is there? Your Honor, the damages are laid out in the Mercer Report, that is Appendix 11 to our brief, and the Mercer Expert Report was submitted at trial without objection into evidence. That report, which I invite the court to review, details exactly what happened here and the scheme that was being pursued by Legacy Point because this, while we're focused on the contract claim, this was a much larger scheme, and in fact the jury below found RICO violations but didn't award damages. Well, your friend on the other side points out that the subcontractors have been satisfied. Is that correct? Yes and no. Part of the scheme, Your Honors, was rather clever in the sense that the subcontractors were paid. However, State Insulation, the company that paid them, acquired their claims. So in other words, State Insulation stepped into the shoes of those subcontractors and then filed a lawsuit against our client based on those claims. What is the status of those claims? So let me first say this argument was brought out on reply by Mr. Scalabrini, and the status of those claims is, Your Honor, that as we stand here today, there is pending in the Chancery Court for Knoxville County, Tennessee, a claim, a lawsuit that has been filed against our client based on the purchase of those claims. And this lawsuit was admitted at trial as Exhibit 86. And the case number, and I am more than happy to file it. Has the amount of those claims been quantified in any way? No, Your Honor. But the key point is that this notion that they have been paid is misdirection because the claims were not paid and satisfied. Rather, the claims were purchased, and that was used to assert a bond claim, exactly what our client feared. One of the intriguing parts of this to me is, since there was a contract, everybody agrees there was a contract covering the construction of these apartment units, right? Yes, sir. And there was a clause in the contract that said if there's going to be any work performed above and beyond, outside, whatever, then it requires this procedure to get change orders. That procedure was not followed. So I guess it's a matter of fact in a way. It's a little intriguing to me that the contractor, your client, Munson Hardesty, didn't insist on change orders being actually submitted pursuant to the contract. But that then kind of brings another question, which is if Tennessee law, as it seems to be, is that if there's a contract that it covers the same subject matter, then you don't have claims in quantum merit and for unjust enrichment. So what does the same subject matter mean in the context of this case? Thank you for that question. And one of the things that- Well, it was a little convoluted, for which I apologize. But I understand it, and let me answer it in this way, because I was going to point out that the fundamental flaw in their argument is conflating the law underlying implied in fact contracts and the law underlying express contracts. Implied in fact contracts are based on conduct. This is a factual issue. It is not a legal issue as they incorrectly contend. And there's overwhelming evidence in the record that the work was performed, that it was beneficial, it was at the request of legacy point, and in fact they carried it on their books as a payable of in excess of $2 million. So their argument would have merit if we had a different set of facts. If we had, for example, change orders that everyone agreed to and then there was a dispute. In that context, if someone said, I want to assert a claim based on equitable remedies, that would not fly because there is a contractual dispute. Here, this is work outside of the specifications. But there's a clause in the contract that says, how does that kind of work have to be dealt with? And it wasn't, and that's what, to me, causes a real problem here. Correct. And that's exactly why we cite the Nicholson case, which is virtually identical facts. There was a provision in the contract in Nicholson for change orders and how they should be done? Yes, Your Honor. There was. And in fact, the argument they are making is precisely the argument that the Tennessee Court of Appeals applied and it denied the contractor the remedy. Was one of the parties not privy to the contract? I don't know the correct word, but wasn't there, it seemed to be saying that the party was not actually a party to the contract that was bringing the lawsuit. Right. One party wasn't, but both were held liable by the Tennessee Supreme Court. Both the owner and the developer, and the Nicholson case, makes the distinction and says there is no contractual remedy available here, but there is an equitable remedy. Why? Again, in that case, just like this case, the work was done, they received the benefit, they acknowledged the benefit, and they didn't want to pay for it. And Nicholson has been cited with approval by other courts of appeals in Tennessee, and we have cited the Realty Shop Westminster case, 7 Southwest 3rd. We have cited the Nashville Painting case, 1996, Westlaw 474426. Those are both courts of appeal cases that echo Nicholson, and they provide that equitable relief is available, even where written change orders are not obtained, even though they're required under the contract. But is that a situation where both parties to the contract agreed that they weren't going to abide by the provision of the contract which required the change orders? Because here we have a situation, it seems to me, we have a situation in which both parties agreed. Now, one may have been feeling like he was being pushed around, but both agreed that the change order provision in the contract was not going to be followed. What's the result of that under Tennessee law? Equitable remedies, Your Honor. Because otherwise, I mean, this happens. Well, who's getting the equity? If both sides agree we're not going to do what the contract requires, and then later one side says, boy, we should have done that because since we didn't, we got had, that's kind of a difficult situation, is it not? Well, they, Your Honor, they're the ones who are acting inequitably. If they go on their books, they carry this as a payable, owed to our client. What does that say? That says they believed, even they believed, that they owed these monies. Otherwise, why would they carry it on their books? What was HUD's status with respect to this contract? It was not a party to the contract. No. But it was a third-party beneficiary? HUD basically provides insurance, which enables the lenders to provide a very favorable financing. And, again, one of the benefits that they received on permanent financing when they went to obtain permanent financing is that they included the 10% equity that would otherwise have been owned by our clients in their cost certification. So they've been benefited in multiple different ways. Do you have any theory or explanation as to this? These are two different amounts that were attributed to the two theories, the $350,000 for quantum merit, marijuana, and $930,000 for unjust enrichment. Is there anything in the record you could point to to kind of explain how the jury could have divided up the money that way? No, Your Honor. But what is in the record, and it's overwhelming, and I again refer to the Mercer report, is that the magnitude of the damages, according to our experts' report that the jury had that was submitted without objection, was between $3 million and $5.7 million. So in a situation where the jury comes in at a level far below what they could have, it is really a stretch for the other side to say that there is double recovery. There can't be double recovery. And as we have cited the Johnson case, the jury is entitled to split Munson Hardesty's damages between its two claims. The reality, Your Honors, is that the jury in this case was very frugal, very frugal, and could have awarded damages far in excess of what they did. I want to just address the jury instructions because we had a very thoughtful and able district judge who asked everyone for their input on the jury instructions, and it bothers me a bit to hear objections to the instructions when there was ample opportunity to say something. Your counsel said something about submitting special instructions that were not accepted. Why wasn't that enough to establish an objection? Your Honor, Rule 51 requires objections to instructions to be made both before after the charge and after the charge, after the jury was charged. That wasn't done. When was the request for special instructions submitted? I'm sorry? Was there a request for special instructions submitted? And if it was, when was it submitted? It was. I don't recall. It was done early, my recollection is. But I remember both sides having plenty of input. Was there any objection made to the instructions as they were actually given? No. No objections were made at the time the instructions were given. Any more questions? No. Okay. Well, thank you, counsel. Thank you very much. And I would ask that the trial court's judgment be affirmed. Hello. A couple items I just wanted to follow up on, which counsel raised. One with respect to what the current status is of the $2.1 million that was actually paid by Mr. Hardesty through state installation. The project was completed in 2009. Their statute of limitations would prohibit state installation from pursuing a claim. The two claims he refers to, well, he refers to one. I don't know which one he's referring to. But there are two outstanding claims out there. One is an interpleader action where there's $100,000 at risk that is ultimately being decided. The parties can't seem to resolve that, and that's currently being stayed. The other is a membership action, which the only claim which is being pursued by Legacy Point in that action is the 0.1% that Mr. Hardesty currently maintains. They sought that because they believed he wasn't pursuing his fiduciary duties that he was supposed to be doing. In neither case is that $2.1 million being sought. With respect to Nicholson, I think it's important to, again, go back to the fact that, Your Honor, you were correct in that one of the parties, the developer, was not a party to the contract. However, what was the essence of that decision, again, was the architect had the apparent authority to bind both the developer, who was not a party, and the owner. Consequently, both were held liable under a breach of contract theory. With respect to Realty Shop, which he also cited in his argument, the central issue there on appeal was that the change order requirement was waived by the parties in a correspondence. So the court did not apply that change order policy because it had, in fact, been waived. With respect to, he also brought up the fact that... But the change order requirement be waived just by the conduct of the parties? In that case, it wasn't by just the conduct of the party. I wasn't asking about that case. In this case, it could not. It had to be in writing. In fact, I think if you look at, I can't remember specifically, but with respect to E on page 100 of our appellate's record, it has that what is required to be done. Again, any change of the contract had to be in writing signed by both parties. Doesn't in Realty itself say that it was waived by the conduct of the parties? Like here it says the most common basis for permitting recovery for extra work without a written change order is that the parties, by their conduct on the job, waived the requirement. In Realty, my recollection of that... I'm reading you the opinion right now. Right, I understand that. But I think if you look further in the opinion, what the court focused on was there was correspondence which waived the requirement. So that's what the court, I believe, focused on. With respect to this contract, again, I think there was a procedure. Where I think the disconnect with plaintiff is that he's focused on, well, this is just work done outside the agreement. Well, yeah, it was work done outside the agreement. But there was a procedure which HUD put in place in all of its contracts that it did not want to have claims coming back. So it had this procedure, a procedure by which I'm not so much sure that it wasn't a procedure that was followed. There was change orders presented by the parties. HUD approved some of those. It disapproved others. It refused to sign them. And that's where I think their argument falls on its... Okay, thank you, Counsel. Thank you very much, Your Honor. We'll take the matter under submission.